BEN KELLEY,

            Petitioner,

– against –

ROBIN LARKIN,

            Respondent.

**MEMORANDUM & ORDER**

11-CV-4566 (ERK)

KORMAN, *J.*:

    Petitioner, Ben Kelley, was convicted after a jury verdict of second degree felony murder and was sentenced to twenty-five years to life. I assume familiarity with the underlying background and procedural history of the case, and proceed to discuss the seven issues raised in this petition for a writ of habeas corpus. These issues essentially mimic those that appellate counsel and petitioner raised on direct appeal. Each is without merit.

    1. Petitioner argues that he was "denied his right to a fair trial when the trial court failed to suppress [his] involuntary pretrial confession based upon his delayed arraignment coupled with indication of sleep deprivation." Pet. for Habeas at Page ID #14. On its face, this argument arguably implicates petitioner's Fourth Amendment right to be promptly arraigned before a judicial officer. Any violation of this Fourth Amendment right cannot provide a basis for relief here because: (1) Fourth Amendment violations are not cognizable on habeas corpus review, *Stone v. Powell*, 428 U.S. 465, 490-93 (1976); (2) the Supreme Court left open the issue whether suppression is the appropriate remedy following the delayed arraignment of a defendant for

whom there was probable cause to arrest, *Powell v. Nevada*, 511 U.S. 79, 84 (1994); and (3) the petitioner confessed after he was in custody for approximately sixteen hours—well within New York's presumptive twenty-four hour period in which an arrestee must be arraigned, *see* N.Y. C.P.L. § 140.20(1); *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 63 (1991) ("Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes . . . the burden shifts to the government . . . ."); *Powell*, 511 U.S. at 84 (referring to "*McLaughlin*'s 48-hour rule"). Thus, the only basis for the petitioner's claim here is that the period of delay, "coupled with the indication of sleep deprivation," renders his confession involuntary, and it is to this issue that I now turn.

Only two witnesses testified at petitioner's *Huntley* hearing—both of them law enforcement officers. The trial judge credited their testimony and made the following finding: "In the Court's view, there is no evidence of sleep deprivation . . . under the totality of the circumstances, the statements made by the defendant were voluntary in all respects, as defined in the applicable law." Huntley Hearing at 187. In affirming the trial judge, the Appellate Division ruled that petitioner's statements were "freely and voluntarily given":

> Contrary to the defendant's contention, that branch of his omnibus motion which was to suppress his statements to law enforcement officials was properly denied. An unnecessary delay in an arraignment, without more, does not cause the accused's right to counsel to attach automatically, and such a delay is only one factor to consider in assessing the voluntariness of a confession (*see People v Ramos*, 99 NY2d 27 [2002]). Here, there is no evidence that any of the statements made by the defendant were the result of coercive tactics. Rather, they were freely and voluntarily given after the defendant was apprised of and acknowledged his right to counsel. Further, there is nothing in the record to indicate that the police delayed the defendant's arraignment to deprive him of his right to counsel, or that the delay was strategically designed to allow the police to continue to question him outside the presence of an attorney (*see People v Williams*, 297 AD2d 325 [2002]; *People v Diaz*, 280 AD2d 553 [2001]).

2

*People v. Kelley*, 73 A.D.3d 809, 809 (N.Y. App. Div. 2d Dep't 2010).

In *Harrington v. Richter*, 562 U.S. 86, 99 (2011), the Supreme Court held that "[f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." Moreover, as the Supreme Court recently reminded the Ninth Circuit, that on direct appeal, "[t]he trial court's determination [on the issue of credibility] is entitled to 'great deference,' and 'must be sustained unless it is clearly erroneous.'" *Felkner v. Jackson*, 562 U.S. 594, 594 (2011) (internal marks omitted) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). Even more so, on habeas review, "AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Id.* (internal quotation omitted). Indeed, the Ninth Circuit has since described that standard as "doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012).

More specifically, in a habeas corpus case involving a challenge to the admissibility of a confession, Judge Kozinski described the difficulty in determining the voluntariness of a confession and the need for deference to state court determinations:

> I doubt anyone but [petitioner] will ever know with certainty whether his confession was voluntary, and perhaps not even he. After all, "Difficulties of proof and subtleties of interrogation . . . [make] it impossible in most cases for the judiciary to decide with confidence whether [a] defendant . . . voluntarily confessed." *New York v. Quarles,* 467 U.S. 649, 683 (1984) (Marshall, J., dissenting). . . . Even federal

3

> judges can't read [petitioner's] mind or travel back in time. And, as the Supreme Court has told us, "The more general the rule, the more leeway courts have in reaching outcomes." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). This is precisely the kind of debatable application of a "general standard" where finality and respect for the independent judgment of the state courts counsels the highest deference on federal habeas review. *See Knowles v. Mirzayance,* 556 U.S. 111, 129 (2009); *see also Harrington v. Richter,* 131 S.Ct. 770, 786 (2011). I would therefore let stand the state court's finding that the confession was voluntary.

*Doody v. Ryan*, 649 F.3d 986, 1024-25 (9th Cir. 2011) (Kozinski, J., concurring). These words provide an appropriate backdrop for analyzing the circumstances of the confession in this case.

Accepting as true the evidence presented at petitioner's *Huntley* hearing, I am unable to conclude that, under the exceedingly deferential standard of review applicable here, the Appellate Division's ruling was unreasonable. Moreover, additional relevant evidence that was not elicited at the suppression hearing emerged at trial and on sentencing. While such additional evidence normally cannot be relied on by the defendant unless he obtains permission from the trial judge to renew a suppression motion, *see* N.Y. C.P.L. § 710.40(4), there is no reason why such evidence may not be considered in reviewing the denial of a motion to suppress, even where there has been no such motion to renew.

Thus, although a determination of "whether a defendant's will was overborne in a particular case, [requires that courts] assess[] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation," *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), the *Huntley* hearing contains no significant information about petitioner's personal traits, other than his age of thirty-six. *See* Huntley Hearing at 62. Nevertheless, at the sentencing hearing, it came out that petitioner was previously convicted of two crimes, including a weapons conviction and a violent felony burglary in the first degree, for which he spent a decade in state prison. Sentencing Hearing at 23-24. No stranger to the

4

criminal justice system, petitioner was arrested on March 29, 2004, at 11:30 p.m., *see* Huntley Hearing at 124, and he confessed on March 30, 2004, at 3:16 p.m., after approximately sixteen hours in custody and only after thirty minutes of interrogation, *see id.* at 94. Petitioner was not subject to continuous interrogation. Rather, he was left alone for nearly the entirety of that custodial period which preceded his confession. *See* Huntley Hearing at 60. Police detectives provided petitioner with a meal, several beverages, and numerous trips to the restroom. Huntley Hearing at 119. Officers did attempt to engage petitioner in conversation on at least two occasions prior to his confession, but upon petitioner remaining mute, the officers did not pursue matters. *See, e.g.*, *id.* at 66-71. In another instance, petitioner responded to a detective's inquiries by "verifying his name and date of birth and [instructing the detective] to throw away his possessions." *Id.* at 75. Moreover, after he was in custody for approximately twelve hours, and before he confessed, his custodial confinement was interrupted by a three hour trip to Brookhaven Memorial Hospital, where he was examined for injuries that he sustained while resisting arrest. Huntley Hearing at 75-76. The record is not clear as to why he had not been taken for examination sooner, although petitioner does not allege that the injuries he suffered were incurred while he was in custody.

At trial, relying on the medical record, Def. Ex. K, the doctor who treated petitioner in the emergency room testified that petitioner was "neurologically intact. He was awake. He was alert. He was oriented to person, place and time. He had no weakness of his extremities. He had no facial weakness. And his gait was normal." Trial Tr. at 2395. Moreover, a CT scan that was administered showed that petitioner "had no trauma to his brain." Trial Tr. at 2397.[1]

---

[1] The doctor circled the word "concussion" under "clinical impression" on petitioner's emergency medicine charts. *Id.* at 2411. This term is vague and connotes a broad spectrum of injury, which can include a minor incident in which someone sustains an impact to the head and

5

Because petitioner complained of pain to his head, his face, his right leg, and back, he was prescribed Motrin and a 5 milligram tablet of Percocet. While the Percocet "could make [a patient] more sleepy" and while it "could impact [a patient's] decision making," Trial Tr. at 2409, the doctor gave the following testimony in response to questions of the Assistant District Attorney:

> Q: And if an individual were under the influence of Percocet, sir, do you think they would be able to have a conversation – withdrawn. In the early stages of Percocet if an individual were speaking and under the influence of it what would you expect would occur with their speech?
>
> A: They could be slurred or disorganized.
>
> Q: Would you agree with me, sir, it's an individual case by case basis as to how an individual reacts to it?
>
> A: Yes.
>
> Q: If an individual were given that medication with that height, 5 foot 7, 140 pounds, at 12 o'clock, at approximately 3 hours into that medication do you believe that in your opinion that individual would be coherent?
>
> A: They could be. Depends on the patient.

Trial Tr. at 2400.

The interchange that ultimately led to petitioner's confession began at approximately 2:40 p.m., about one hour after petitioner had returned from the hospital, when one of the detectives (truthfully) told petitioner that his two accomplices were speaking with detectives. Petitioner replied, "What the fuck are those two guys saying?" Huntley Hearing at 77. The detective then explained that he would need to read petitioner his *Miranda* rights if he was going

---

recovers within a "few hours." WebMD, Brain & Nervous System Health Center, *Topic Overview: Concussion*, http://www.webmd.com/brain/tc/traumatic-brain-injury-concussion-overview. The doctor's observation of petitioner some twelve hours after petitioner sustained the injuries for which he was treated, coupled with the radiologist's assessment of the CT scan, suggests that his concussion was minor.

6

to speak. Petitioner indicated he would speak to the detective and was then advised of his rights and signed a *Miranda* card in several places.[2] *Id.* at 78-79, 85. A full confession ensued within thirty minutes.

While the District Attorney has the burden of proving voluntariness by a preponderance of the evidence, *see Lego v. Twomey*, 404 U.S. 477, 486 (1972), "on federal collateral review, the petitioner bears the burden of proving that his constitutional rights were violated." *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing, *inter alia*, *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987); *Martin v. Wainwright*, 770 F.2d 918, 926 (11th Cir. 1985); *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir. 1980)); *see also Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013); *Field v. Lord*, No. 13-4172, 2015 WL 1740609, at *1 (2d Cir. April 17, 2015) (summary order). As Judge Cabranes wrote in *Whitaker v. Meachum*, 123 F.3d at 716, while on collateral review courts are required "to resolve independently the ultimate legal question of voluntariness of waiver, this in no way suggests that the Government bears the burden of proving whether a waiver was voluntary."

I am unable to conclude that petitioner has met his burden, assuming that these burden-of-proof cases add anything more to the hurdle already posed to habeas corpus relief by AEDPA. Indeed, the circumstances here, as discussed above, are far removed from Supreme Court cases in which the inference of coercion was easily made. *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 396-402 (1978) (suspect interrogated for four hours in intensive care unit, with tubes in his throat and nose, heavily medicated, after being shot, despite explicit request for counsel); *Darwin v. Connecticut*, 391 U.S. 346, 347-49 (1968) (per curiam) (suspect interrogated for forty-eight

---

[2] Petitioner does not raise a *Miranda* issue per se, but rather argues that the totality of the circumstances rendered his confession inadmissible. I highlight *Miranda* only insofar as it is one consideration in the totality of circumstances. *See Schneckloth*, 412 U.S. at 226.

7

hours incommunicado while officers denied access to counsel); *Greenwald v. Wisconsin*, 390 U.S. 519, 519-21 (1968) (per curiam) (defendant, with a ninth-grade education, was questioned without *Miranda* warnings for over eighteen hours and prevented from eating, sleeping, and taking his medication); *Beecher v. Alabama*, 389 U.S. 35, 36-38 (1967) (per curiam) (officer fired rifle next to suspect's ear and said, "If you don't tell the truth I am going to kill you"); *Clewis v. Texas,* 386 U.S. 707, 709-12 (1967) (suspect was arrested without probable cause, interrogated for nine days with little food or sleep, and gave three unwarned "confessions," each of which he immediately retracted); *Davis v. North Carolina,* 384 U.S. 737, 745-53 (1966) (defendant was interrogated "daily" for sixteen days, during which no one other than the police spoke to him, and during which he was fed an "extremely limited" diet); *Reck v. Pate,* 367 U.S. 433, 439-42 n.3 (1961) (mentally disabled youth interrogated incommunicado for a week "during which time he was frequently ill, fainted several times, vomited blood on the floor of the police station and was twice taken to the hospital on a stretcher"); *Ashcraft v. State of Tenn.*, 322 U.S. 143, 153 (1944) (arrestee subjected to thirty-six hours without sleep or rest as well as over thirty continuous hours of interrogation at the hands of experienced officers and attorneys).

Significantly, petitioner did not testify at his *Huntley* hearing, even though he could have done so without fear that anything he said could be used against him at trial, *see Simmons v. United States*, 390 U.S. 377, 384 (1968). Only petitioner knew the effect that the lack of sleep or the Percocet had on him. There is thus good reason to invoke "[t]he rule, based on considerations of fairness, [that] does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Campbell v. United States*, 365 U.S. 85, 96 (1961). Indeed, to the extent that he bears the burden here of establishing that his confession was not knowingly and voluntarily made, his failure to testify significantly undermines his ability to

obtain relief. *See United States v. Male Juvenile*, 121 F.3d 34, 42 (2d Cir. 1997) (affirming the district court's refusal to "suppress the confession based on conjecture as to defendant's state of mind when he was free to provide evidence as to his state of mind without incriminating himself"); *see also United States v. Mullens,* 536 F.2d 997, 1000 (2d Cir. 1976) (government's evidence of *Miranda* waiver was uncontradicted because defendant chose not to take the stand at the suppression hearing and rebut government's version of events even though he might have done so without risk that anything he said could be later used against him at trial); *People v. Orso*, 270 A.D.2d 947, 947 (N.Y. App. Div. 4th Dep't 2000) ("Defendant did not testify at the *Huntley* hearing that the police promised to release him if he confessed, nor did he testify that he was tired."); *People v. Pearce*, 283 A.D.2d 1007, 1007 (N.Y. App. Div. 4th Dep't 2001) ("Moreover, defendant presented no evidence that he suffered from sleep deprivation during the approximately one-hour interview at the hospital."). This is not a matter of drawing any adverse interest from the defendant's failure to testify, although the Second Circuit has left open the question whether such an inference can be drawn in circumstances such as these. *United States v. Male Juvenile*, 121 F.3d at 42. Rather, petitioner's failure to testify leaves a gap in the record that prevents him from contradicting the State's evidence. *Id.*

In sum, I am unable to say that the trial court's holding at the *Huntley* Hearing, as affirmed by the Appellate Division, constituted unreasonable application of clearly established Supreme Court law.

2. Petitioner argues that he was "denied his right to a fair trial when the trial court permitted detective McLeer to testify that appellant implicated himself after he was confronted by his codefendants." Pet. for Habeas at Page ID #14. This statement is without factual basis in the record. The record shows that at one point (6:15 a.m.) during the period in which petitioner

9

was in custody, two other co-defendants were brought in to meet with petitioner. As described in the trial record, the following interchange occurred:

> **Ms. Merrifield:** Without telling us what was said, could you tell us whether or not Anthony Ryans or Gregory Felder spoke to Ben Kelley?
>
> **Det. McLeer:** Yes, I can. Gregory Felder spoke. And Anthony Ryans said nothing.

Trial Tr. at 1993-94.

Although petitioner said nothing in response to this visit and did not confess until approximately nine hours later, he argued in his Appellate Division brief that this testimony made "obvious to the jury the content of the conversation – an accusation against defendant Kelley – and the source – Gregory Felder – even though it did not directly state this information." Pet.'s App. Div. Br. at 21. This argument is based on pure speculation about what inference the jury might have drawn. Indeed, the facts here stand in stark contrast to *Mason v. Scully*, 16 F.3d 38, 40 (2d Cir. 1994), where a police officer testified that he had a conversation with the defendant's accomplice. Although the content of the conversation was not elicited, the police officer informed the jury that, following the conversation, he began searching for the defendant. *Id.* The only reasonable inference to draw from this was that the accomplice made an out of court statement implicating the defendant. The inference in the present case that petitioner was implicated by his accomplice is far more attenuated than that in *Mason*, in which the inference was clear and compelling. In any event, since petitioner here ultimately confessed, and since there is other compelling circumstantial evidence of his guilt, there is no reasonable probability that this could have affected petitioner's guilty verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).

*3 & 4.* Petitioner raises two evidentiary issues in grounds three and four of his petition. Ground three complains that Detective McLeer was permitted to testify that the quilted jacket

10

that petitioner wore at the time of arrest was similar to a jacket depicted in the surveillance video from the crime scene. In ground four petitioner argues that duct tape recovered near masks and a gun was erroneously admitted into evidence. Neither of these rulings rises to the level of a due process violation. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985). The jury was quite capable of viewing the video and jacket and making its own determination, as well as giving the duct-tape evidence only that weight which it deserved. Moreover, as is the case with respect to petitioner's second ground for relief, any error in the admission here was harmless. *See Brecht*, 507 U.S. at 622.

5. Petitioner argues that the prosecutor failed to prove his guilt beyond a reasonable doubt. This claim is frivolous. In order to prevail under a sufficiency of the evidence argument in a habeas proceeding, the petitioner "bears a very heavy burden." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). In assessing such cases, the reviewing court must decide whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). Passing over petitioner's confession, petitioner was found hiding under a deck near the getaway car as well as in close proximity to the location where detectives found certain material used at the crime scene, Trial Tr. at 1077; petitioner fled after the police discovered him under the deck, Trial Tr. at 1080, 1236; video surveillance captured what appeared to be petitioner at the crime scene, Trial Tr. at 1771-72, 2487; video surveillance also showed that

11

petitioner's distinctive jacket was present at the crime scene, Trial Tr. at 1771-72; petitioner told one of the detectives that he was left handed, and the video surveillance showed that the perpetrator carried a firearm in his left hand, Trial Tr. at 2491; expert testimony indicated the possibility that petitioner's DNA was inside a ski mask used at the crime scene, although, because of a variety of circumstances, the expert could not say this with the level of certainty that normally accompanies DNA determinations, Trial Tr. at 2486.

      6. Petitioner argues that the cumulative effect of counsel's errors deprived him of the effective assistance of trial counsel. The Appellate Division rejected this argument on the merits. *People v. Kelley*, 73 A.D.3d at 809. To establish ineffective assistance of counsel under Supreme Court precedent, defendants must show that (i) "counsel's representation fell below an objective standard of reasonableness" and that (ii) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first prong requires that courts recognize counsel's "wide latitude" in making tactical decision and imposes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The second prong requires that defendants "shows that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 694.

      In *Harrington v. Richter*, 562 U.S. 86, 105 (2011), the Supreme Court addressed the applicability of AEDPA deference as applied to claims of ineffective assistance of counsel under *Strickland*. Recognizing that AEDPA and *Strickland* are both "highly deferential" on their own, the Supreme Court observed that together they are "doubly so." *Id.* Thus, the question is not "whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner first argues that counsel should have moved for sanctions regarding the District Attorney's failure to report on its "Voluntary Disclosure Form" one of petitioner's spontaneous statements made at the time of his arrest. Pet. for Habeas at Page ID #16. Petitioner argues that doing so would have resulted in the inadmissibility of the incriminating statement—"I shamed my mama." *Id.*; Huntley Hearing at 13. Yet there is no reasonable probability that the admission of this vague statement affected the outcome at trial considering the mountain of other highly damaging evidence against petitioner as outlined earlier.

Petitioner next claims that counsel failed to "request [] an extension to subpoena and review the medical records of the petitioner" and that counsel failed to "object to the delayed discovery made by the respondent." Pet. for Habeas at Page ID #16-17. Related to this is petitioner's argument that counsel was ineffective for "fail[ing] to re-open the suppression hearing," based on "the administ[ration of the] narcotic [Percocet] . . . along with the contentions in Ground One [that law enforcement intentionally delayed petitioner's arraignment for the sole purpose of obtaining a statement]." Pet. for Habeas at Page ID #17; *see* Pet.'s Supp. Br. in App. Div. at 18. As explained earlier, the medical records detail that petitioner visited an emergency room doctor and was prescribed Motrin and a single 5 milligram tablet of Percocet approximately three hours before confessing. Trial Tr. at 2398. Under the circumstances testified to by petitioner's emergency room doctor, as outlined earlier, I am unable to conclude that the Appellate Division acted unreasonably in determining that petitioner's ineffective assistance of counsel claim was without merit. *People v. Kelley*, 73 A.D.3d at 810.

Lastly, petitioner argues that counsel failed to investigate or call witnesses regarding the issue of why officers brought in petitioner's co-defendants to speak with petitioner during that period of petitioner's custody preceding his confession. Pet. for Habeas at Page ID #17. As a

preliminary matter, this issue was explored at trial. Specifically, the officers testified that this meeting was intended to show petitioner that his co-defendants had been arrested, as the detectives had previously represented, and that "having given [petitioner] the opportunity to see these other two people if he would have had any reaction to it." Trial Tr. at 1997. Passing over the fact that this strategy backfired, because petitioner had no reaction, petitioner does not point to any exonerating information that counsel might have discovered upon investigating this narrow issue, nor does petitioner identify any witness whom counsel might have called to testify favorably regarding the matter. *Id.*

7. Petitioner argues that he was "denied his right to a fair trial when the respondent failed to comply with counsel's discovery demand." *Id.* Again, the District Attorney apparently did not include one of petitioner's spontaneous statements in its Voluntary Disclosure Form—"I shamed my mama." Also, the District Attorney did not timely disclose to petitioner his medical records detailing his visit to the emergency room. The Appellate Division ruled that these issues were unpreserved and without merit. *People v. Kelley*, 73 A.D.3d at 810. First, barring exceptions not present here, preservation rulings such as this constitute an independent and adequate state law basis preventing habeas relief. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001). Second, any violation of New York discovery rules (*e.g.*, *Rasario*) is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Lastly, there is no *Brady* violation where, like here, disclosure would not have resulted in a different outcome. *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004).

## CONCLUSION

The petition for a writ of habeas corpus is denied. I grant the certificate of appealability with respect to the voluntariness of the confession.

**SO ORDERED.**

Brooklyn, New York
April 24, 2015

_____
Edward R. Korman
Senior United States District Judge